**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CV-61135-STRAUSS**

SCOTT MACFARLANE,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 7] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 9]. The Court has reviewed both motions and all other pertinent portions of the record. For the reasons discussed herein, Plaintiff's Motion [DE 7] will be **DENIED** and Defendant's Motion [DE 9] will be **GRANTED**.

**I.      BACKGROUND & PROCEDURAL HISTORY**

On July 26, 2021, Plaintiff applied for disability insurance benefits, alleging a disability onset date of March 29, 2020 ("Alleged Onset Date" or "AOD"). Tr. 28, 83, 92, 188-94. His claim was denied initially and upon reconsideration. *See* Tr. 28, 83-100. Thereafter, on August 24, 2023, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"), at which Plaintiff and a vocational expert testified. Tr. 44-78. On November 17, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 28-39. On November 26, 2024, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision

as the final decision of the Commissioner.  Tr. 12-14.  Consequently, on June 6, 2025, Plaintiff commenced this action seeking review of the Commissioner's decision.

## II.    STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence."  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  It "is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]."  *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.    DISCUSSION

### A.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  To arrive at a disability determination, the ALJ must undertake the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.

The first step requires the ALJ to determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If so, a finding of "no disability" is made. If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If no severe impairment is found, then the ALJ will conclude that the claimant is not disabled; if a severe impairment is found, then the ALJ will proceed to the next step of the sequential evaluation.  *See* 20 C.F.R. § 404.1520(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. § 404.1520(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  20 C.F.R. § 404.1520(d).  If not, the inquiry will proceed to the next step.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).  The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).  The RFC determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must compare the claimant's RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled.  20 C.F.R. § 404.1520(f).

If the claimant establishes an inability to return to past relevant work (or does not have past relevant work), the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs.  *Id.*  At this fifth and final step, the ALJ must resolve whether the claimant is capable of performing other work that exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## B.  ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled between the AOD and the date of the ALJ's decision.  Tr. 28-39.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD.  Tr. 30.  At step two, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus, degenerate joint disease of the right hip, neuropathy, hypertension, history of stroke, and cervical spondylosis.  Tr. 30.

In addition to addressing Plaintiff's severe impairments at step two, the ALJ found that Plaintiff's "medically determinable mental impairments of neurocognitive disorder, anxiety, and depression, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."  Tr. 31.  In so finding, the ALJ noted that she considered the paragraph B criteria (the four broad areas of mental functioning).  Tr. 32.  The ALJ assessed a "mild" limitation in all four areas.  Tr. 32.  Then, at step three, the ALJ found that Plaintiff does not have an impairment or combination of

4

impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 33.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except he can stand/walk 6 hours in an 8-hour day, sit for 6 hours in an 8-hour day; occasionally climb ramps/stairs, ladders/ropes/scaffolds, and stoop; he can frequently balance on level surfaces and occasionally balance on uneven terrain[]; he can frequently kneel, crouch, and crawl, and handle with the left upper extremity; avoid concentrated exposure to vibration and hazards such as unprotected heights.

Tr. 34.  Based upon Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing his past relevant work (as generally performed).  Tr. 38.  Therefore, the ALJ concluded that Plaintiff is not disabled.  Tr. 38-39.

## C. ANALYSIS

In his motion, Plaintiff argues that remand is warranted for three separate reasons.  First, Plaintiff contends that the ALJ erred by failing to consider Plaintiff's obesity.  Second, Plaintiff contends the ALJ erred by failing to evaluate whether Plaintiff's mental impairments impact his RFC.  Third, Plaintiff contends the ALJ erred in discounting his subjective symptoms.  For the reasons discussed in the sections that follow, Plaintiff has failed to establish reversible error.

### 1. Obesity

An ALJ must consider a claimant's obesity as part of the disability determination.  *See* SSR 19-2p, 84 Fed. Reg. 22924 (May 20, 2019); *see also Minnis v. Comm'r of Soc. Sec.*, No. 24-11281, 2025 WL 974570, at *5 (11th Cir. Apr. 1, 2025); *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  For instance, an ALJ "must consider the limiting effects of obesity when assessing a person's RFC."  SSR 19-2p.  After all, "[t]he combined effects

of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." *Id.*

Here, Plaintiff argues that the ALJ erred by failing to evaluate Plaintiff's obesity. While Plaintiff correctly notes that the ALJ's decision makes no reference to obesity, the absence of any such discussion is, at most, *harmless* error.

As an initial matter, it is unclear from the record whether Plaintiff even has a medically determinable impairment ("MDI") of obesity. "In the medical community, obesity is defined as a BMI of 30.0 or higher." SSR 19-2p. The Social Security Administration ("SSA") establishes "obesity as an MDI by considering objective medical evidence (signs, laboratory findings, or both) from an" acceptable medical source. *Id.* "Signs and laboratory findings . . . that may establish an MDI of obesity include measured height and weight, measured waist size, and BMI measurements over time." *Id.* To have an MDI of obesity, a claimant's weight, measured waist size, or BMI must demonstrate "a consistent pattern of obesity." *Id.* SSA will not calculate BMI based on a claimant's self-reported height and weight. *Id.*

Plaintiff contends that the record consistently reflects Plaintiff had a BMI of 30 or greater during the relevant time period. [DE 7] at 7, 11 (citing Tr. 435, 439, 443, 447, 490, 524, 528). The pages of the record Plaintiff cites reflect the following:

| Page | Date | BMI |
| --- | --- | --- |
| 435 | 12/16/21 | 29 or 30.38[1] |
| 439 | 11/4/21 | 29 or 30.65 |
| 443 | 9/29/21 | 29 or 30.11 |
| 447 | 8/27/21 | 29 or 30.11 |
| 490 | 9/7/22 | 29 or 31.19 |
| 524 | 4/19/23 | 31.27 |
| 528 | 7/19/23 | 29.2 |

---

[1] The Vitals section of this page reflects a BMI of 30.38. However, the Physical Exam section of the same page reflects a BMI of 29. Certain other pages in the record also contain similar inconsistencies. For such pages, I note both BMI numbers that are reflected.

Several other medical records during the relevant period reflect BMIs under 30, with many records (including records from the visits in the chart reflected above) indicating that Plaintiff falls in the overweight range (BMI of 25-29.9) rather than obese.  Tr. 433, 437, 441, 445, 451, 452, 455, 460, 473, 488, 492.  One record from March 2022 even places Plaintiff's BMI at 27.  Tr. 473.

At any rate, even if the ALJ should have included some discussion regarding Plaintiff's weight or BMI, Plaintiff has failed to satisfy his burden of showing that the ALJ's failure to do so is harmful error.  *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1274 n.11 (11th Cir. 2024) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." (citation omitted)).  For starters, while Plaintiff alleged that numerous conditions limit his ability to work, Plaintiff did not allege obesity was one of those conditions. *See, e.g.*, Tr. 207.  Additionally, as Defendant points out, Plaintiff did not mention weight or obesity during his testimony at the hearing before the ALJ.  Even more significantly, Plaintiff does not specify how, if at all, his alleged obesity impacts his RFC or ability to work.[2]  *Cf. Skarbek*, 390 F.3d at 504 ("[A]ny remand for explicit consideration of Skarbek's obesity would not affect the outcome of this case. Notably, Skarbek does not specify how his obesity further impaired his

---

[2] Plaintiff states that he has other conditions, including cardiovascular conditions, "that would likely be exacerbated in combination with obesity." [DE 7] at 11.  It is true that Plaintiff has other documented conditions, including cardiovascular conditions.  It is also true that "[o]besity is often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders," that "[p]eople with obesity have a higher risk for other impairments," and that "the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately."  SSR 19-2p.  However, that does not automatically mean that Plaintiff's alleged obesity increases the severity or functional limitations of Plaintiff's other impairments. *See id.* (emphasis added) ("Obesity in combination with another impairment(s) *may or may not* increase the severity or functional limitations of the other impairment(s).").

ability to work, but speculates merely that his weight makes it more difficult to stand and walk." (internal citation omitted)).

Nevertheless, the state agency medical consultant at the reconsideration level did indicate that "obesity" contributed to certain of Plaintiff's postural and environmental limitations. *See* Tr. 98. Specifically, the state agency consultant pointed to obesity and other conditions to support his findings that: (1) Plaintiff is limited to occasional climbing (ramps, stairs, ladders, ropes, and scaffolds), occasional balancing, occasional stooping, frequent kneeling, frequent crouching, and frequent crawling; and (2) Plaintiff should avoid concentrated exposure to vibration and hazards. Tr. 98. Significantly, the ALJ adopted the foregoing limitations when assessing Plaintiff's RFC. *See* Tr. 34 (finding Plaintiff "occasionally climb ramps/stairs, ladders/ropes/scaffolds, and stoop; he can frequently balance on level surfaces and occasionally balance on uneven terrain[]; he can frequently kneel, crouch, and crawl, and handle with the left upper extremity; avoid concentrated exposure to vibration and hazards such as unprotected heights"). The ALJ's assessment of such limitations only underscores the *harmless* nature of any error. *See Skarbek*, 390 F.3d at 504 ("Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions.").[3]

---

[3] *See also Rutherford*, 399 F.3d at 552-53 ("Rutherford contends that the ALJ was obligated to consider her obesity explicitly and that his failure to do so requires a remand. We disagree. . . . [A] remand is not required here because it would not affect the outcome of the case. Rutherford never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments. . . . [E]ven if we assume . . . that obesity could be a factor, Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous

## 2. Plaintiff's Mental Impairments

Plaintiff contends that the ALJ erred by failing to account for Plaintiff's mental impairments when assessing Plaintiff's RFC.  The Court disagrees.

As indicated above, at step two of the sequential evaluation, although the ALJ found that Plaintiff has several severe impairments, she found that Plaintiff's *mental* impairments are not severe.  When the ALJ later assessed Plaintiff's RFC, she found that Plaintiff is limited to light work and that he has certain postural and environmental limitations, but the ALJ did not include any limitations in Plaintiff's RFC based on Plaintiff's mental impairments.  Plaintiff does not argue that the ALJ erred by finding his mental impairments to be nonsevere at step two.  Instead, he contends that the ALJ failed to evaluate what impact, if any, Plaintiff's mental impairments have on his RFC.

Although Plaintiff does not allege that the ALJ erred at step two, the ALJ's assessment of Plaintiff's mental impairments at step two is relevant to Plaintiff's argument that the ALJ erred by failing to consider Plaintiff's mental impairments when determining Plaintiff's RFC.  At step two, an ALJ must consider the medical severity of a claimant's impairments.  *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019); 20 C.F.R. § 404.1520(a)(4)(ii),(c).  "In evaluating the severity of a claimant's mental impairment at step[] two . . ., the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria."  *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021) (citing *Schink*, 935 F.3d at 1269)).  "The four areas consider the claimant's ability to (1) understand,

medical evidence as a basis for his findings regarding her limitations and impairments. Because her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition." (footnotes omitted)); *Gillis Comm'r of Soc. Sec.*, No. 5:24-CV-685-PRL, 2026 WL 696827, at *3-5 (M.D. Fla. Mar. 12, 2026).

remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Id.* at 1324-25 (citing 20 C.F.R. § 404.1520a(c)(3)). "The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning." *Id.* at 1325 (citing 20 C.F.R. § 404.1520a(c)(4)).

Here, the ALJ assigned a rating of "mild" in all four broad functional areas. Tr. 31-32. For that reason, and because the ALJ found that "the evidence [did] not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities," the ALJ concluded that Plaintiff's mental impairments are not severe. Tr. 32. In other words, the ALJ determined – based on her assessment of the "Paragraph B" criteria and the evidence – that Plaintiff's "medically determinable mental impairments of neurocognitive disorder, anxiety, and depression, considered singly and in combination, do not cause more than minimal limitation in [Plainitff's] ability to perform basic mental work activities and are therefore nonsevere." Tr. 31.

Nevertheless, step two only involves a "threshold" inquiry. *Schink*, 935 F.3d at 1265. It simply "'acts as a filter' to weed out claims where there are no severe impairments at all." *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) (quoting and citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). Because the ALJ found severe impairments in this case at step two – albeit no severe *mental* impairments – the ALJ did not "weed out" Plaintiff's claim at step two. Rather, the ALJ denied Plaintiff's claim at step four after finding that Plaintiff, based on his RFC, could perform his past relevant work.

"The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis." *Buckwalter*, 5 F.4th at 1325. That analysis is distinct from the RFC inquiry at the outset of step four, which is a "more detailed inquiry." *Id.* Nonetheless, the step-two analysis of the "Paragraph B" criteria may inform or influence the RFC assessment. For instance, when an

ALJ determines a claimant's RFC, the ALJ must typically account for any "moderate" ratings that the ALJ assessed when evaluating the "Paragraph B" criteria.  *Cf. id.* ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's *moderate* limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." (citing *Winschel*, 631 F.3d at 1180-81) (emphasis added)).  The same is not true, however, when, as in this case, an ALJ only assesses "mild" limitations in the four broad functional areas.  In fact, "persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while" assessing the paragraph B criteria.  *See, e.g.*, *Alvarado v. Kijakazi*, No. 22-CV-60416, 2023 WL 2548424, at *13 (S.D. Fla. Mar. 17, 2023) (quoting *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) and collecting other cases); *see also Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-11184, 2023 WL 7404856, at *5 (11th Cir. Nov. 9, 2023) ("Contrary to Garcia's argument, the ALJ was not required to incorporate Garcia's mental impairments that he determined at step two in the rest of his RFC assessment because he found any impairments to be only mild, not moderate.").

At the same time, even when an ALJ assesses only mild paragraph B limitations, the ALJ must still consider "all relevant medical and other evidence" when determining a claimant's RFC.  *Buckwalter*, 5 F.4th at 1320; *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").  An "ALJ must also consider a claimant's medical condition taken as a whole."  *Schink*, 935 F.3d at 1269 (citations omitted).  Importantly, though, "[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record."  *Buckwalter*, 5 F.4th at 1326 (citing *Dyer*, 395 F.3d at

1211); *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (quoting *Dyer*, 395 F.3d at 1211) (alterations adopted)).

The ALJ's decision in this case shows that she did in fact further consider Plaintiff's mental impairments and condition as a whole in determining Plaintiff's RFC.  In other words, the ALJ did not simply decline to further consider Plaintiff's mental impairments based on the ALJ's step-two finding that Plaintiff's mental impairments were not severe.  As noted above, though, the ALJ's discussion of the evidence regarding Plaintiff's mental impairments at step two is relevant to Plaintiff's argument here.  Importantly, the Court must "read the ALJ's decision as a whole"; "it would be a needless formality to have the ALJ repeat substantially similar factual analyses." *Raper*, 89 F.4th at 1275 (citations omitted).

Here, reading the ALJ's decision as a whole shows that the ALJ extensively considered the evidence regarding Plaintiff's mental impairments.  First, the ALJ explained that she was persuaded by the opinions of the state agency consultants that Plaintiff is only mildly limited in the four broad functional areas.  The ALJ found their opinions in this regard persuasive because: (1) "they are supported by the consultants' review of the medical evidence of record, including that [Plaintiff's] memory was intact with no significant limitations and he had adequate social functioning"; and (2) they are "consistent with the substantial objective evidence of record which shows [Plaintiff] drives, is independent in activities of daily living, was able to return to his past work at a heavy exertional level after his stroke, and he has had limited mental health treatment." Tr. 31.  In finding the consultants' opinions persuasive, the ALJ also explained that Plaintiff

himself "has denied significant mental health concerns during the period at issue and told a consultative examiner that he does not believe he needs mental health treatment." Tr. 31. In fact, Plaintiff "reported that his biggest problem relating to his ability to maintain employment is his physical condition." Tr. 31.

Next, the ALJ discussed consultative examinations Plaintiff underwent with a consultative examiner, Dahlia Gordon, Psy.D., in March 2022 and March 2023. *See* Tr. 31, 480-84, 499-503. The ALJ explained, *inter alia*, that: (1) after both examinations, the examiner opined Plaintiff has only mild limitations with attention, working memory, and recall; (2) after the second examination, the examiner opined that Plaintiff "has fair to good judgment and insight and may have some limitations with concentration"; (3) "[t]he examiner opined that [Plaintiff] does not appear to have a severe mental health condition which would limit his capacity for employment and his prognosis for employment is predominantly limited by his physical condition" (though the examiner added after the second examination that Plaintiff's cognitive condition also limits his capacity for employment). Tr. 31. Ultimately, the ALJ found the examiner's opinions "consistent with mild findings . . . and partially persuasive," further explaining that: (1) Plaintiff had appropriate affect and was cooperative, while showing slight anxiety and some mild impairments with concentrating, persisting, and maintaining pace"; and (2) that "the overall record . . . show[ed] no history of mental health treatment but some evidence that [Plaintiff's] mind wanders." Tr. 31. Significantly, in explaining why she found no severe mental impairments, the ALJ stressed that Plaintiff, when testifying at the hearing before the ALJ, "did not mention any mental impairments as the reason he cannot work." Tr. 32.

After evaluating the persuasiveness of the foregoing opinions and findings, the ALJ proceeded to evaluate the paragraph B criteria, ultimately assessing mild limitations. In doing so,

13

while the ALJ noted some minor issues (*e.g.*, "the claimant was slightly impaired with an ability to recall up to 6 digits forward and up to 4 digits backward"), the ALJ found, *inter alia*, that: (1) much of Plaintiff's performance during his consultative examinations was "generally unremarkable"; (2) Plaintiff "reported having 'a good group' of friends" and "gets along very well with authority figures"; (3) Plaintiff travels to New Jersey to visit his daughter; (4) Plaintiff "completed a mental status assessment, persisting even after answering some questions incorrectly"; (5) Plaintiff "testified cohesively during the hearing before the [ALJ], which demonstrates his ability to remain focused on the matter at hand, understand the questions posed to him, organize his thoughts appropriately, and formulate clear and concise responses while maintaining" appropriate decorum; and (6) Plaintiff "can feed, dress, and bathe himself" and "can drive himself to the grocery store around twice a week." Tr. 32.  Consequently, the ALJ concluded that Plaintiff's mental impairments are not severe.  Tr. 32.  The ALJ then noted that the mental RFC assessment used at steps four and five requires a "more detailed assessment" than the evaluation of the paragraph B criteria at steps two and three, and the ALJ expressly stated that her RFC assessment "reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis."  Tr. 33.

When the ALJ subsequently conducted her RFC assessment, the bulk of her assessment focused on Plaintiff's physical impairments.  Significantly, though, the ALJ did not ignore Plaintiff's mental impairments.  Even though she found them to be nonsevere at step two, her decision shows that she still considered them when assessing Plaintiff's RFC.  For instance, in the portion of her decision discussing Plaintiff's RFC, the ALJ noted that a consultative examiner opined that Plaintiff has no limitations with memory or understanding.  Tr. 36.  The ALJ also expressly evaluated the opinions of a medical provider, Dr. Robinson, that Plaintiff "is incapable

14

of even 'low stress' jobs" and that "emotional factors contribute to the severity of [Plaintiff's] symptoms and functional limitations."  Tr. 36.  However, the ALJ found Dr. Robinson's opinion unpersuasive, Tr. 36, and Plaintiff does not contend that the ALJ erred in evaluating the persuasiveness of Dr. Robinson's opinions.  And notably, the ALJ found that Dr. Robinson's opinions were unpersuasive because, among other reasons, they were "unsupported by her treating notes showing [Plaintiff's] normal mood and affect."  Tr. 36.

In his motion, Plaintiff argues that the ALJ's analysis of the Paragraph B criteria – i.e., the ALJ's assessment of mild limitations – "suggests Plaintiff has some work limitations in functioning."  [DE 7] at 15.  On the contrary, the ALJ found that Plaintiff's "mental impairments of neurocognitive disorder, anxiety, and depression, considered singly and in combination, *do not cause more than minimal limitation* in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."  Tr. 31 (emphasis added).  In other words, by finding Plaintiff's mental impairments are not severe, the ALJ effectively found that "the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with [Plaintiff's] ability to work, irrespective of age, education or work experience."  *Schink*, 935 F.3d at 1265[4] (quoting

---

[4] Plaintiff's reliance on *Schink* – in arguing the ALJ erred – is misplaced for at least two reasons: (1) as discussed above, the ALJ here did discuss Plaintiff's mental impairments when assessing Plaintiff's RFC; and (2) the ALJ's step-two determination that Plaintiff's mental impairments are not severe is supported by substantial evidence (something Plaintiff does not contest).  *Cf. Prude v. Comm'r, Soc. Sec. Admin.*, No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024) ("Although the ALJ's acknowledgment of his mental impairments is brief, we find it sufficient because it explicitly acknowledges the claimant's mental capabilities relevant to a job. We also note that substantial evidence supports the ALJ's determination of a non-severe mental impairment at step two—and Prude does not argue otherwise. By contrast, in *Schink* we determined that the ALJ erred at both steps two and four by discounting medical testimony of mental impairments despite evidence showing a bipolar disorder."); *Jones v. Comm'r of Soc. Sec.*, No. 3:24-CV-406-DNF, 2025 WL 1728789, at *6 (M.D. Fla. June 23, 2025) ("Unlike . . . *Schink*, the ALJ here specifically discussed Plaintiff's mental impairments in assessing the RFC."); *see also Aksyonov v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-23203, 2024 WL 4210793, at *8-11 (S.D. Fla. Sept. 17, 2024).

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  Thus, the ALJ's analysis of the paragraph B criteria did not suggest that Plaintiff's mental impairments cause work limitations in functioning.

Plaintiff's Motion includes certain other contentions that are also worth briefly addressing. For instance, in arguing that the ALJ should have included RFC limitations concerning Plaintiff's ability to interact with others, Plaintiff says that the ALJ accepted his testimony that he would have difficulty functioning in crowds.  *See* [DE 7] at 15.  However, what the ALJ accepted was Plaintiff's "reports that he does not like to be in crowds."  Tr. 32.  The ALJ did not find that Plaintiff has *difficulty functioning* in crowds.  And, notably, Plaintiff did not *testify* about any issues he has functioning in crowds or interacting with others.  In fact, immediately after referencing Plaintiff's reports regarding crowds, the ALJ expressly found that Plaintiff's "mental impairments are not severe, in part, because [Plaintiff] *testified only with regard to his physical impairments and did not mention any mental impairments as the reason he cannot work*."  Tr. 32 (emphasis added).

Having reviewed the hearing transcript, the Court finds that the ALJ's characterization of Plaintiff's testimony is accurate (or at the very least reasonable).  While Plaintiff says that he "provided extensive testimony about how his combination of impairments limited his ability to maintain attention and concentration," [DE 7] at 15, that is hardly accurate.  Specifically, at the hearing, Plaintiff's attorney asked Plaintiff, "do any of *these issues* affect your ability to focus, maintain your attention and concentration, anything like that," and Plaintiff responded, "[a]ll the time."  Tr. 68 (emphasis added).  The *issues* Plaintiff was discussing, however, concerned Plaintiff's *physical* impairments, not Plaintiff's *mental* impairments.  *See* Tr. 67-68.  The closest Plaintiff came to discussing his mental impairments occurred just after, when he stated that "sitting

16

around" at home "creates anxiety." Tr. 68. That one brief remark does not undermine the ALJ's finding that Plaintiff "did not mention any mental impairments as the reason he cannot work." Tr. 32. Rather, the Court's review of the hearing transcript supports the ALJ's determination.

Plaintiff also contends in his motion that the evidence shows he sought treatment for depression and anxiety. However, as the ALJ found, the overall record "shows no history of mental health treatment," and Plaintiff "denied significant mental health concerns during the period at issue," "told a consultative examiner that he does not believe he needs mental health treatment," and "reported that his biggest problem relating to his ability to maintain employment is his physical condition." Tr. 31. In arguing that he sought treatment for depression and anxiety, Plaintiff merely points to the two consultative examinations to which he was referred in March 2022 and March 2023 in connection with his application for disability insurance benefits. *See* [DE 7] at 15-16. Neither that, nor anything else in the record, undermines the ALJ's finding that the record does not reflect a history of mental health treatment.

Lastly, Plaintiff asserts that the ALJ, in her RFC assessment, erred by failing to evaluate evidence from two treating providers, such as their statements that Plaintiff is incapable of even low stress jobs. On the contrary, the ALJ expressly referenced, in the RFC assessment portion of her decision, Dr. Robinson's statement that Plaintiff is incapable of even low stress jobs. Tr. 36. The ALJ simply found Dr. Robinson's opinions unpersuasive, Tr. 36 – a determination Plaintiff has not argued the ALJ erred in making. The ALJ likewise found the opinions of the other treating provider Plaintiff references – a physical therapist who Plaintiff did not have an ongoing treatment relationship with – to be unpersuasive (and Plaintiff does not argue the ALJ erred in evaluating the physical therapist's opinions). Tr. 37.

Ultimately, reading the ALJ's decision as a whole shows that ALJ considered Plaintiff's mental impairments and condition as a whole in conjunction with assessing Plaintiff's RFC.  The ALJ's findings are supported by substantial evidence, and the ALJ applied the correct legal standards in assessing Plaintiff's mental impairments.

### 3.  Plaintiff's Subjective Complaints

Plaintiff has failed to establish error with respect to the ALJ's evaluation of his subjective complaints.  When a claimant attempts to prove that he is disabled by providing testimony regarding his pain or other symptoms, he must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Raper*, 89 F.4th at 1277 (quoting *Wilson*, 284 F.3d at 1225).  This standard applies to both complaints regarding subjective pain and complaints regarding other subjective conditions.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the objective medical evidence shows that a claimant's impairment "could reasonably be expected to produce" the pain or symptoms alleged by the claimant, "the ALJ must evaluate the intensity and persistence of the claimant's alleged pain and consider 'all of the available evidence' from both medical and nonmedical sources." *Harvey v. Soc. Sec. Admin., Comm'r*, No. 22-10281, 2022 WL 17175649, at *3 (11th Cir. Nov. 23, 2022) (citing 20 C.F.R. § 416.929(c)(1)).

ALJs consider the following factors when evaluating a claimant's statements regarding the intensity of his symptoms:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) the claimant's treatments other than medication; (6) any measures used to relieve pain; and (7) other factors concerning a claimant's functional limitations and restrictions based on pain or other symptoms.

18

*Raper*, 89 F.4th at 1277 (citing 20 C.F.R. § 416.929(c)(3)(i)-(vii)).  "The ALJ must consider these factors in relation to other evidence in the record and whether the claimant's statements conflict with other evidence."  *Id.* (citing 20 C.F.R. § 416.929(c)(4)).  Nonetheless, an "ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* (citing *Dyer*, 395 F.3d at 1210).

In order to discredit a claimant's subjective complaints, an ALJ must "clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms."  *Dyer*, 395 F.3d at 1210 (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).  Provided that an ALJ does so and that the ALJ's findings are supported by substantial evidence, courts will not disturb the ALJ's determination.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence." (internal citations omitted)).

Here, the ALJ preliminarily made clear that she conducted her subjective symptom analysis in accordance with 20 C.F.R. § 404.1529 and SSR 16-3p, and the ALJ set forth the pain standard. Tr. 34.  Based on her consideration of the evidence, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 34.  Thus, the ALJ applied the correct legal standard and made an explicit credibility finding. She then proceeded to explain why she found as she did.

For starters, the ALJ observed that although Plaintiff had a stroke in April 2018 (roughly 2 years before the AOD), Plaintiff was able to return to work soon after his stroke, and he continued in that job until the AOD when he was fired.  Tr. 35, 37.  The ALJ also noted that objective evidence indicated few issues thereafter.  For instance, in October 2018 and October 2019, Plaintiff's "physical examinations and diagnostic imaging were unremarkable" and Plaintiff "had normal range of motion, strength, gait, coordination, and sensation."  Tr. 35.  In October 2019, Plaintiff's "neurologic examination was entirely normal," and Plaintiff reported to a hospital physician . . . that, while he had numbness affecting the arm and leg, it was mild in nature, and he mostly recovered completely from the stroke."  Tr. 35.  Plaintiff contends it was error for the ALJ to rely on evidence preceding the AOD.  Had the ALJ not explained why she considered such evidence notwithstanding the fact that it preceded the AOD, there might be something to Plaintiff's contention.  Significantly, though, the ALJ explicitly recognized that evidence from 2018 and 2019 preceded the AOD, but she nevertheless found such evidence to be relevant under the circumstances of this case, explaining as follows:

> Although the above objective findings predate the alleged onset date, the undersigned finds them nonetheless probative and persuasive on the issue of disability. There is no evidence to support a significant worsening in the claimant's condition after the stroke which was, as reflected above, mild and mostly recoverable. In fact, as discussed below, the record consists primarily of consultative examinations and medical opinions rendered for the purpose of this application, often after just one or two visits with the claimant.

Tr. 35.[5]  The ALJ's rationale for finding certain evidence from the period between Plaintiff's stroke and the AOD to be relevant is reasonable.

---

[5] Plaintiff contends in his motion that the ALJ incorrectly found his condition did not significantly worsen after his stroke, noting that his physician increased his gabapentin dosage multiple times between March 2021 and September 2022.  According to Plaintiff, "[t]his pattern of escalating pain medication dosages over an 18-month period demonstrates objectively worsening neuropathy that could not be controlled with stable medication management."  [DE 7] at 19.  However, the

Moreover, the ALJ did not rely on such evidence alone.  She also relied on other evidence, including the finding of the state agency medical consultant at the reconsideration level – which the ALJ found to be persuasive – that Plaintiff is limited to light work.  Tr. 35.  The ALJ explained that the finding was "supported by the consultant's review of the record, including that, while [Plaintiff] had a mild imbalance, he had normal strength and tone and declined a neurological consultation."  Tr. 35.  Additionally, the ALJ found the consultant's opinion to be "consistent with the substantial objective evidence of record which shows claimant had no residuals from the stroke, is independent in activities of daily living, and was able to return to his past work after the stroke in 2018 performing it at the heavy level."  Tr. 35-36.

Confusingly, Plaintiff asserts in his motion that the ALJ did not consider his activities of daily living.  The ALJ's decision shows that she clearly did.  Not only did the ALJ expressly find during her RFC assessment (as just noted) that Plaintiff "is independent in activities of daily living," she also provided further context in other portions of her decision, including noting that Plaintiff drives, is able to feed, dress, and bathe himself, and travels to New Jersey to visit his daughter.  Tr. 31-32.  The ALJ also expressly stated, in the RFC portion of her decision, that she considered a third-party function report completed by Plaintiff's wife.  Tr. 37.  While recognizing that such reports may be helpful in assessing a claimant's activities of daily living, the ALJ found Plaintiff's wife's report to lack substantial support in the record.  Tr. 37.  Nevertheless, the ALJ's decision makes clear that she did consider the report.

---

mere fact that Plaintiff's doctor increased his gabapentin dosage on several occasions does not show that the ALJ's findings are not supported by substantial evidence.  And notably, "[u]nder a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; []he must show the absence of substantial evidence supporting the ALJ's conclusion."  *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

21

In addition to the evidence discussed above, the ALJ also relied on certain evidence from a March 26, 2022 consultative examination. *See* Tr. 36, 471-78. The ALJ noted that: (1) Plaintiff's physical examination was unremarkable; (2) Plaintiff "had negative bilateral straight leg raising, normal ranges of motion without joint deformities, and no difficulty with ambulation"; and (3) Plaintiff "had normal grip strength in his bilateral hands with intact dexterity." Tr. 36. Significantly, though, the ALJ rejected the examiner's opinion that Plaintiff had no limitations, finding that the overall record established some limits and impairments. Tr. 36. And based on such evidence, the ALJ found Plaintiff was limited to light work with additional limitations. Tr. 36. Notably, the ALJ's RFC determination was ultimately more restrictive than not only the opinion of the consultative examiner who performed the March 26, 2022 examination, but the findings of the state agency medical consultant at the initial level as well. *See* Tr. 35-36. In fact, the consultant at the initial level found that Plaintiff is capable of work at the medium exertional level. Tr. 35. While the ALJ's RFC determination is also less restrictive than other opinions (i.e., Dr. Robinson and the physical therapist), as discussed in the preceding section, Plaintiff has not argued that the ALJ erred in evaluating the persuasiveness of those opinions.[6]

Overall, the ALJ's decision shows that the ALJ considered Plaintiff's subjective symptoms along with all of the other evidence and, ultimately, made "a clearly articulated credibility finding supported by substantial evidence" in discounting Plaintiff's subjective symptoms.[7] *Mitchell*, 771 F.3d at 782. Therefore, this Court cannot disturb the ALJ's determination. *See id.*

---

[6] Plaintiff does assert in a perfunctory manner, when addressing Dr. Robinson's opinion, that "[t]he ALJ's line of thinking is wrong and inconsistent with the regulations." [DE 7] at 19. However, Plaintiff never alleges any error by the ALJ under 20 C.F.R. § 404.1520c (the regulation applicable to the consideration of medical opinions), and the Court sees no error.

[7] In addition to the reasons discussed above, the ALJ also found that Plaintiff "provided inconsistent explanations as to why he stopped working at the [AOD]." Tr. 36.

## CONCLUSION

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 7] is **DENIED** and Defendant's Motion [DE 9] is **GRANTED**.  The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 13th day of April 2026.

Jared M. Strauss
**United States Magistrate Judge**

23